**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY J. LEWIS, JR,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN KENNETH BLACK,<br><br>Respondent. | CASE NO. 1:23-cv-01627<br><br>DISTRICT JUDGE BRIDGET MEEHAN BRENNAN<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Gregory J. Lewis, Jr. ("Petitioner" or "Mr. Lewis"), brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his convictions in the Cuyahoga County Court of Common Pleas for two counts of gross sexual imposition and two counts of abduction in Case No. CR-18-626709-A.  (ECF Doc. 1 ("Petition").)  He filed his Petition pro se on August 12, 2023.[1]  (*Id.*)  The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 13, 14, 15, 16.)  Also before the Court are Petitioner's "Motion for Leave Requesting; [Proceed to Judgment Motion]" and Respondent's "Motion to Strike Motion to Proceed to Judgment."  (ECF Docs. 18, 19, 20.)

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Grounds Six and Seven as procedurally defaulted and **DISMISS** the remainder of the Petition (ECF Doc. 1) as untimely under the statute of limitations.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Lewis's Petition was docketed on August 22, 2023 (ECF Doc. 1) and placed in the prison mailing system on August 12, 2023 (*id.* at p. 15).

1

### I.    Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  Because Petitioner did not pursue a timely direct appeal or an appeal from denial of his petition for post-conviction relief, there is no decision from an Ohio court summarizing the facts underlying Mr. Lewis's conviction and sentence.  For the reasons discussed below, a factual summary is not necessary in this case.

### II.    Procedural History

#### A.    State Court Convictions

##### 1.    2018 Conviction

On March 14, 2018, a Cuyahoga County Grand Jury indicted Mr. Lewis on two counts of rape (O.R.C. § 2907.02(A)(2)) (Counts 1 and 3), two counts of kidnapping (O.R.C. § 2905.01(A)(4)) (Counts 2 and 5), and one count of gross sexual imposition (O.R.C. § 29078.05(A)(1)) (Count 4) in Case No. CR-18-626709-A.  (ECF Doc. 13-1, pp. 6-8.)  Counts 2 and 5 contained sexual motivation specifications under O.R.C. § 2941.147(A).  (*Id.*)  Mr. Lewis was arraigned and pled not guilty to all counts on March 19, 2018.  (*Id.* at p. 14.)

On July 23, 2018, Mr. Lewis pled guilty to two counts of gross sexual imposition as amended in Counts 1 and 4 of the indictment and to two counts of abduction as amended in Counts 2 and 5.  (*Id.* at p. 262.)  Count 3 was nolled.  (*Id.*)  On August 22, 2018, the trial court sentenced Mr. Lewis to five years in prison with five years of post-release control.  (*Id.* at p. 18.)

##### 2.    2021 Conviction

Although the grounds for relief asserted in the Petition only challenge Petitioner's 2018 conviction (*see* ECF Doc. 1), some of the post-conviction legal challenges to the 2018 conviction

also reference or relate to Petitioner's 2021 conviction in Cuyahoga County Case No. CR-20-6533100-A.  The details of the 2021 conviction are therefore summarized herein.[2]

On September 22, 2020, a Cuyahoga County grand jury indicted Mr. Lewis with two counts of rape (O.R.C. § 2907.02(A)(2)) (Counts 1 and 2) and one count of kidnapping (O.R.C. § 2907.01(A)(4)) (Count 3) stemming from events that occurred in 2005.  (ECF Doc. 13-1, pp. 10-11.)  All three counts contained a sexually violent predator specification, and Count 3 contained a sexual motivation specification.  (*Id.*)  Mr. Lewis pled not guilty on October 16, 2020.  (*Id.* at p. 16.)  On August 23, 2021, he changed his plea to guilty of one count of rape as amended to remove the sexually violent predator specification; the other counts were nolled.  (*Id.* at p. 21.)  The trial court imposed a prison sentence of eight years with five years of post-release control, to be served concurrent with the five-year sentence in Case No. CR-18-626709-A.  (*Id.*)

**B.      First Motion for Delayed Appeal**

Mr. Lewis did not timely appeal his 2018 conviction but filed a pro se motion for a delayed direct appeal with the Eighth District Court of Appeals on August 18, 2022.  (ECF Doc. 13-1, pp. 24-36.)  On August 22, 2022, the Eighth District dismissed the appeal sua sponte because Mr. Lewis had not filed a notice of appeal or other required documents.  (*Id.* at p. 59.)  Mr. Lewis did not appeal the Eighth District decision to the Supreme Court of Ohio.

**C.      Motion for Documents**

On August 2, 2022, Mr. Lewis filed a pro se motion for leave to request trial documents relating to the 2018 conviction in the trial court, requesting copies of all transcripts, journal entries, opinions, indictments, affidavits, orders, docket sheets, and discovery requests.  (ECF

---

[2] While Petitioner does allege certain deficiencies relating to his 2021 conviction in the Traverse (*see* ECF Doc. 14, pp. 3, 9, 10-11, 40), those alleged deficiencies are not properly before this Court because Petitioner may not raise new claims for the first time in his Traverse, *see, e.g., Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

3

Doc. 13-1, pp. 63-64.)  The State filed a brief in opposition, arguing Petitioner was not entitled to transcripts at the State's expense because no appeal was pending.  (*Id.* at pp. 66-68.)  The trial court denied the motion without explanation on August 24, 2022.  (*Id.* at p. 70.)  Mr. Lewis did not appeal this decision to the Eighth District Court of Appeals or the Supreme Court of Ohio.

## D.      Second Motion for Delayed Appeal

On March 1, 2023, Mr. Lewis filed a notice of appeal and a second motion for leave to file a delayed appeal of the 2018 conviction with the Eighth District Court of Appeals.  (*Id.* at pp. 126-74.)  The State filed a brief in opposition.  (*Id.* at pp. 176-79.)  The court denied the motion for delayed appeal in a one sentence order on March 22, 2023, and dismissed the appeal.  (*Id.* at pp. 181, 183.)  On March 28, 2023, Mr. Lewis filed a reply to the State's opposition brief (*id.* at pp. 186-90) and a motion to object and/or of objection (*id.* at pp. 192-207).  The Eighth District construed these filings as a motion for reconsideration and denied them as untimely.  (*Id.* at p. 209.)  Mr. Lewis did not timely appeal this decision to the Supreme Court of Ohio.[3]

## E.      State Trial Court Petition for Post-Conviction Relief

On May 1, 2023, Mr. Lewis filed a pro se motion to vacate or set aside judgment of conviction or sentence for the 2018 conviction in the state trial court.  (ECF Doc. 13-1, pp. 211-20.)  In his petition, he set forth the following claims:

> **Claim Number One:** This Petitioner has the right to file this Delayed Post-Conviction Petition, pursuant to R.C. 2953.23, Revised Code, that has superseded, R.C. 2953.21, this supported by the United States Supreme Court, (Citing) State v. Calhoun, 86 Ohio St. 3d, 279, 1999-Ohio-102, 714 N.E. 2d. 905… Constitutional Claims were not raised at trial. Defense was not raised. Exculpatory Defense was not raised, nor was real defense raised. Self-Incrimination was advised and forced. Due Process of Law was ignored. No Derivative defense was presented. Deprivation of rights under the color of law, was committed, along with civil state and federal violations.

---

[3] In his Petition, Mr. Lewis claims that he filed an appeal to the Supreme Court of Ohio on June 17, 2023.  (ECF Doc. 1, p. 5.)  However, his own Exhibit A indicates that the Supreme Court of Ohio declined to accept the documents for filing because they were untimely.  (ECF Doc. 1-3, pp. 1, 3.)

**Claim Number Two:** Defense counselor was ineffective; deprivation of rights under the color of law, (Citing) Title 18, U.S.C. Sec. 242; this Cuyahoga County Common Pleas Court Judge, demonstrated, bias, anticipatory acts and/or actions, pursuant this Petitioner being found guilty before being considered of being innocent; due process of law and of procedures were ignored and violated and circumvented unlawfully; this petitioner's convictions and sentencing are contrary to law and evidence; to wit evidence was "specious-ly" contrary, on its face. Procedural Errors, and structural Error's, where committed.

(*Id.* at pp. 213, 218 (alterations and spelling errors in original).)  The State opposed the petition

at untimely (*id.* at pp. 231-38), and Mr. Lewis filed a reply (*id.* at pp. 240-54).  On May 22,

2023, the trial court summarily denied the petition.  (*Id.* at p. 256.)

**F.      Federal Habeas Corpus Petition**

Mr. Lewis raises 15 grounds for relief in his Petition:

**GROUND ONE:**  Wrongfully Denied; Criminal R. 32.1; An withdraw of Petitioners Guilty Plea, Pursuant to, Threats, Intimidation, Force and Coercion.

**GROUND TWO:** Jurisdictional Violation's, of Crossing State-Line, Transmitting Jurisdictional Documents Illegally and more.

**GROUND THREE:** Terrorism. Terrorism – Threat, Thereby this Cuyahoga County Prosecutor, and Judge, thus Aid-ed [sic] by Defense Attorney.

**GROUND FOUR:** Ineffective Assistance of Counsel, Against the Common Pleas Court and Defense Attorney.

**GROUND FIVE:** Wrongful Denial of Exculpatory, Evidence, Motion and Request

**GROUND SIX:**  Wrongful Alluding to the Acceptance, Then the Denial of a Delayed Appeal.

**GROUND SEVEN:** Wrongful Tactical Due Process Delays.

**GROUND EIGHT:** Conspiracy to Circumvent Rights.

**GROUND NINE:** View Point, and, Racial Discrimination.

**GROUND TEN:** Impeachable Offenses Committed

**GROUND ELEVEN:** Wrongful, Alluding and Falsification of Conviction and Sentencing.

5

**GROUND TWELVE:** Improper and Fraudulent Defense.

**GROUND THIRTEEN:** Structural Errors

**GROUND FOURTEEN:** Impeachable Offenses Committed

**GROUND FIFTEEN:** Manifestly Excessive Sentencing.

(ECF Doc. 1, pp. 5-34 (spelling errors in original).) The Petition challenges Mr. Lewis's 2018 conviction alone (*see* ECF Doc. 1, pp. 1-4, 6-8, 11) and only references the 2021 conviction in response to the question whether Petitioner has a "future sentence to serve after [he] complete[s] the sentence for the judgment that [he] [is] challenging" (*id.* at p. 13).

### III. Law & Analysis

Respondent argues that the Petition should be dismissed or denied for several reasons, including: (1) the Petition is barred by the AEDPA statute of limitations (ECF Doc. 13, pp. 7-12); (2) all grounds for relief are procedurally defaulted (*id.* at pp. 12-17); and (3) all grounds for relief are non-cognizable and/or without merit (*id.* at pp. 17-24). In response, Petitioner argues that the Return of Writ "lacks factual-ness," makes assumptions, and does not address his grounds for relief. (ECF Doc. 14, pp. 6-10.) He reiterates some arguments from the Petition but also asserts some new arguments on the merits. (*Id.* at pp. 13-42). He asserts in both the Petition and Traverse that he was "seriously impeded" from filing a timely petition (ECF Doc. 1, pp. 13-15; ECF Doc. 14, p. 6), but does not otherwise respond to Respondent's arguments for dismissal of the Petition based on the statute of limitations and procedural default (*see* ECF Docs. 14, 16).

For the reasons set forth below, the undersigned concludes that: (1) Grounds One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the Petition are untimely under the AEDPA statute of limitations; and (2) Grounds Six and Seven are procedurally defaulted. Accordingly, the undersigned recommends that the Court **DISMISS**

6

Grounds Six and Seven as procedurally defaulted and **DISMISS** the remainder of the Petition as untimely under the statute of limitations.

**A.      Standard of Review Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214 ("AEDPA") limits the adjudication of federal habeas petitions in which state prisoners have collaterally attacked their convictions. *See Reed v. May*, 134 F.4th 455, 459 (6th Cir.), *cert. denied sub nom. Reed v. Fredrick*, 146 S. Ct. 226, 223 L. Ed. 2d 78 (2025); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."). Under 28 U.S.C. § 2254, as amended by AEDPA, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181 (citing 28 U.S.C. §§ 2254(a), (b), (c)).

"AEDPA's 're-litigation bar' applies when a state court denies a prisoner's claim on the merits, rather than denying it for procedural reasons." *Reed*, 134 F.4th at 459 (citing 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). Under the "re-litigation bar," when a federal habeas application involves a claim that was "adjudicated on the merits in State court," the application "shall not be granted" unless the State court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington*, 562 U.S. at 100. The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.      AEDPA Statute of Limitations**

28 U.S.C. § 2244 limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus, providing:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d). AEDPA's statutory tolling provision provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Thus, under section 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts. *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003). This statutory tolling continues "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and further "until the expiration of the

8

period for further State court review, whether or not the petitioner actually seeks such review," *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).

Section 2244(d)(2) does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted). Thus, once the limitations period has expired, a "collateral petition[] can no longer serve to avoid a statute of limitations." *Id.*

In addition to statutory tolling, the AEDPA statute of limitations may be equitably tolled in appropriate circumstances. The Supreme Court has explained that this defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted). Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Id.* at 650 (internal quotations omitted). There are generally two forms of equitable tolling available, traditional equitable tolling and tolling based on "actual innocence."

To support traditional equitable tolling, a petitioner must show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal citations and quotations omitted); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). Tolling is evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted). "[P]ro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse . . . late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see*

9

*also Hall*, 662 F.3d at 750-52 (lack of transcript, pro se status and limited law library access did not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding a "lack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations).

The Supreme Court has also found that equitable tolling may apply where a petitioner "can credibly demonstrate actual innocence." *Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024) *cert. denied sub nom. Hubbard v. Tanner*, 145 S. Ct. 1201, 221 L. Ed. 2d 271 (2025) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)); *see also Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (explaining that a petitioner "may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice") (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).  Equitable tolling under this standard "requires the presentation of 'new reliable evidence'" not presented at trial, which may include "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'"  *Hubbard*, 98 F.4th at 743 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)).

Although a petitioner must present "new reliable evidence" to meet this standard, courts are directed to look to the entire record to determine whether a credible claim of actual innocence has been made.  *Id.* (citing *House v. Bell*, 547 U.S. 518, 537 (2006)).  "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted).  Thus, to be entitled to equitable tolling, a petitioner must do "more than only undermine the state's case." *Hubbard*, 98 F.4th at 748. Ultimately, the Supreme Court has underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely

than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at 395 (brackets in original) (quoting *Schlup*, 513 U.S. at 329).

**C.      The Petition Should be Dismissed as Untimely, Except Grounds Six and Seven**

Respondent contends that the Petition is not timely because it was not filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A), and Mr. Lewis has not shown that he is entitled to statutory or equitable tolling.  (ECF Doc. 13, pp. 7-12.)  Mr. Lewis asserts the Petition was timely filed under 28 U.S.C. §§ 2244(d)(1)(B), (d)(1)(C), and (d)(2), and argues that his "state remedies and strategic legal advancement[] were 'seriously impeded'" and "he had 'no control' over what was being done wrongful against his state and federal remedies, through-out the exhaustion thereof." (ECF Doc. 1, p. 13-15.)  In his Traverse, he argues more specifically that he was "impeded/blocked, stalled and delay-ed with intent by the state courts" when the state courts "refused and failed" to enter his delayed appeals on their dockets and refused to provide journal entries "many-times."  (ECF Doc. 14, p. 6.)

Although Petitioner only asserts that his Petition is timely under sections 2244(d)(1)(B) and (C), not sections 2244(d)(1)(A) or (D), the undersigned will consider all four sections in light of Petitioner's pro se status.  For the reasons set forth below, the undersigned concludes: the Petition is untimely under section 2244(d)(1)(A); sections 2244(d)(1)(B) and (C) do not apply; Grounds Six and Seven may be timely under section 2244(d)(1)(D), but no other grounds for relief are timely under that section; and (4) Mr. Lewis has not met his burden to demonstrate that he is entitled to statutory or equitable tolling.  Therefore, the undersigned recommends that the Court **DISMISS** Grounds One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the Petition as untimely under the statute of limitations.

11

1.        **The Petition is Untimely Under Section 2244(d)(1)(A)**

The undersigned first considers the timeliness of the Petition under § 2244(d)(1)(A), which starts the running of the statute of limitations from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  The trial court issued a judgment entry of conviction and sentence on August 22, 2018. (ECF Doc. 13-1, p. 18.)  Petitioner then had 30 days to file a notice of appeal with the Eighth District Court of Appeals.  *See* Ohio App. R. 4(A)(1).  He did not file a notice of appeal on or before the September 21, 2018 deadline.  Although he later filed two motions seeking leave to file a delayed appeal, those motions were summarily denied by the court of appeals.  (ECF Doc. 13-1, pp. 59, 181.)  Therefore, the one-year statute of limitations under § 2244(d)(1)(A) started to run on September 22, 2018, and expired on September 22, 2019.

Mr. Lewis did not file the Petition until August 12, 2023, nearly four years after the expiration of the statute of limitations under § 2244(d)(1)(A).  (ECF Doc. 1.)  Thus, the Petition is time-barred under § 2244(d)(1)(A) unless the statute of limitations was tolled.

2.    **Sections 2244(d)(1)(B) and (C) Do Not Apply**

Mr. Lewis asserts in the Petition that his claims for relief are timely pursuant to sections 2244(d)(1)(B) and (C), arguing that his "state remedies and strategic legal advancement[] were 'seriously impeded'" and "he had 'no control' over what was being done wrongful against his state and federal remedies, through-out the exhaustion thereof."[4]  (ECF Doc. 1, p. 13-15.)  For the reasons set forth below, the undersigned finds neither provision applies in this case.

---

[4] He also asserts the Petition is timely under 28 U.S.C. § 2244(d)(2), which pertains to statutory tolling and will be addressed in Section III.C.4., *infra*.

12

i.      Section 2244(d)(1)(B)

Under § 2244(d)(1)(B), the statute of limitations begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed."  To apply this provision, Petitioner "must establish that (1) he was prevented from filing a federal habeas petition, (2) by State action, (3) in violation of the Constitution or federal law." *Turner v. Jones*, No. 3:14 CV 1180, 2016 WL 4727248, at *3 (N.D. Ohio Sept. 12, 2016) (citation omitted).  The Sixth Circuit emphasizes there must be "'a causal relationship between the unconstitutional state action and [the petitioner] being prevented from filing the petition.'" *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) (citation omitted).  Indeed, the Sixth Circuit has denied relief when a petitioner "failed to 'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitation period expired." *Id.* (citation omitted).

Here, Petitioner argues he was "seriously impeded" in seeking state court remedies, hindering his "state remedies and timelines," when he was not given certain documents despite his right to "receive and review all necessary documents of discovery, facts finding and conclusion; alleged victim's police reports; witness reports; and this unsigned [plea-bargain] 'plea-deal' document." (ECF Doc. 1, pp. 13-14 (brackets in original).)  Further, he argues that he was "impeded/blocked, stalled and delay-ed with intent by the state courts" when the appeals court "refused and failed to enter" his delayed appeals on their dockets and then refused to provide journal entries "many-times." (ECF Doc. 14, p. 6.)  Thus, he argues his ability to timely seek federal habeas relief was hindered by: (1) the State's failure to provide documents relating to his conviction and plea; and (2) state court errors relating to docketing and journal entries for his post-trial motions.  The alleged errors do not support the application of § 2244(d)(1)(B).

13

Beginning with the alleged failure to provide documents relevant to his trial court proceedings, Petitioner has not adequately shown that the failure prevented him from timely filing his federal habeas petition.  First, the only evidence before this Court indicating that Petitioner requested any such documents is a motion he filed in the state trial court in August 2022, four years after his conviction, which appears to have been dismissed because he did not have an appeal pending in the state courts at that time.  (*See* ECF Doc. 13-1, pp. 66-68, 70.)  There is no evidence that Petitioner made earlier requests for the documents, or what response— if any—he received to such requests.  Petitioner certainly did not offer a clear explanation for the four-year delay between his conviction and his motion seeking documents.

Second, the evidence indicates that Petitioner was able to submit multiple filings in the state and federal courts without the relevant documents, including two state court motions for leave to file a delayed appeal and a petition for post-conviction relief (*see* ECF Doc. 13-1, pp. 24-36, 126-74, 211-20), and the federal habeas Petition that is before this Court (ECF Doc. 1). Filing the Petition without first receiving the requested documents was appropriate, since a federal habeas petition need only "set forth in summary form the facts supporting each of the grounds" specified in the petition; there is no requirement to submit evidence or plead every fact with specificity.  Rules Governing § 2254 Cases, Rule 2(c); *see Hall*, 662 F.3d at 751.  Once the Petition was filed, Respondent filed a copy of the state court record (*see* ECF Doc. 13-1), and other procedures were available for Petitioner to seek additional discovery, *see* Rules Governing Section 2254 Cases, Rule 6 (providing a process for discovery after filing a habeas petition); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002).  Thus, Petitioner's alleged inability to obtain the relevant documents did not prevent him from filing his federal habeas petition.

14

Turning to the State's alleged failure to docket Petitioner's delayed appeals or to provide journal entries at the appellate level, Petitioner has again failed to show that the alleged actions prevented him from timely filing the Petition. First, thirteen of the grounds for relief asserted in the Petition challenge actions that allegedly occurred when Petitioner's criminal charges were pending before the state trial court in 2018.[5] (*See* ECF Doc. 1.) Actions taken by the state court of appeals four or five years after the 2018 conviction cannot be said to have impeded Petitioner's ability to assert his trial-related claims within one year of his conviction.

And as to the two remaining claims—which challenge actions allegedly taken in connection with motions Petitioner filed in state court in 2022 and 2023—the standard in section 2244(d)(1)(B) is inapplicable because the state actions that allegedly "inhibited" the filing of the Petition are the same actions challenged as unconstitutional in the two claims. In Ground Six, Petitioner asserts that the state appeals court and prosecutor told him requested "exculpatory documents" would be released if he "prove[d] that he [wa]s seeking to actually file a 'delayed appeal,'" and that his delayed appeal would be accepted if he completed "all the proper Delayed-Appeals-Application-Documents." (ECF Doc. 1, p. 17.) In Ground Seven, Petitioner alleges the state courts failed to provide opinions and journal entries regarding his motion for delayed appeal and petition for post-conviction relief, causing him "serious delays" and hindering due process. (*Id.* at p. 18). These claims align directly with Petitioner's arguments in the Traverse that the appeals court "refused and failed to enter this Petitioner's delayed appeals" on its docket and "then refused to provide this Petitioner with a journal-entry" many times. (ECF Doc. 13, p. 6.) It is not a logical application of the statutory language—which applies to state actions that create an "impediment to filing an application"—to treat the alleged violation asserted in a claim for

---

[5] Only Grounds Six and Seven challenge activities that allegedly occurred after the original investigation, prosecution, guilty plea, and sentencing. (*See* ECF Doc. 1, pp. 17-18.)

15

relief as an "impediment" to the filing of that same claim for relief. Instead, claims for relief predicated on state actions that allegedly occurred years after the original conviction are more appropriately addressed in the context of § 2244(d)(1)(D), as discussed in Section III.C.3., *infra*.

For the reasons set forth above, the undersigned finds Petitioner has not shown "he was so inhibited by the state's action" in not providing records or ruling on court filings in 2022 and 2023 "that [Petitioner] was unable to file and state a legal cause of action before the limitation period expired" in 2019. *Winkfield*, 66 F. App'x at 583; *see also Oberacker v. Noble*, No. 18-3589, 2018 WL 4620666, at *2 (6th Cir. Sept. 24, 2018) ("[T]his court has consistently held that a state-created impediment to a direct appeal in state court does not invoke the limitations period of § 2244(d)(1)(B) because it is not an impediment to filing a timely federal habeas petition."); *Franks v. Bradley*, No. 5:18 CV 35, 2018 WL 5886528, at *8 (N.D. Ohio Oct. 19, 2018) (finding a failure to provide a trial transcript "did not *prevent* Petitioner from filing a habeas petition") (emphasis in original) (citing *Lloyd*, 296 F.3d at 633), *report and recommendation adopted,* 2018 WL 5884544 (N.D. Ohio Nov. 9, 2018), *superseded and report and recommendation adopted,* 2019 WL 1670999 (N.D. Ohio Apr. 17, 2019).

The undersigned accordingly concludes that Mr. Lewis has failed to show he is entitled to a later start date for the running of the statute of limitations under § 2244(d)(1)(B).

    **ii.**    **Section 2244(d)(1)(C)**

Under § 2244(d)(1)(C), the statute of limitations begins to run "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Here, other than circling subsection (C) and stating that he is requesting relief "[p]ursuant to . . . (1-C)" in the Petition (ECF Doc. 1, pp. 14-15), Mr. Lewis offers no argument

16

or legal citations to support a finding that there is a right "newly recognized by the Supreme Court" that has been "made retroactively applicable" in this case. The undersigned is aware of no newly recognized right that would support the application of § 2244(d)(1)(C) in this case.

The undersigned accordingly concludes that Mr. Lewis has not shown he is entitled to a later start date for the running of the statute of limitations under § 2244(d)(1)(C).[6]

### 3. Grounds Six and Seven May be Timely Under Section 2244(d)(1)(D)

Under § 2244(d)(1)(D), the AEDPA statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Mr. Lewis argues only that his claims are timely under Sections 2244(d)(1)(B) and (C), making no argument regarding Section 2244(d)(1)(D). Nevertheless, the undersigned notes that Petitioner's claims for relief in Grounds Six and Seven challenge actions of the state courts and/or prosecutor that allegedly occurred at or after the time that the state court of appeals denied Petitioner's first motion for leave to file a delayed appeal on August 22, 2022. (*See* ECF Doc. 1, pp. 17-18 (Grounds Six and Seven); *see also* ECF Doc. 13-1, p. 59.)

In *Sexton v. Wainwright*, 968 F.3d 607, 613 (6th Cir. 2020), the Sixth Circuit held that a state appellate court order denying a request for leave to file a delayed appeal was a "necessary factual predicate" to a subsequent federal habeas claim challenging the constitutionality of that denial order, and that the habeas claim was timely under § 2244(d)(1)(D) when it was filed within one year of the state court's denial order. *Sexton*, 968 F.3d at 613. Following the same reasoning, Petitioner's general allegations regarding representations made to him in the context of his motions for leave to file a delayed appeal (Ground Six) and related journal entries and

---

[6] The undersigned further finds this argument to be inadequately developed and effectively waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted) (alterations in original).

17

opinions that were not provided to him (Ground Seven) could be considered "factual predicates" that support a later statute of limitations start date for those two grounds under § 2244(d)(1)(D). [7]

Since the Petition was filed before August 22, 2023—i.e., less than one year after the state court of appeals denied the first motion for leave to file a delayed appeal—Grounds Six and Seven of the Petition may have been timely filed under § 2244(d)(1)(D).  The undersigned will therefore consider Respondent's procedural default arguments as to those claims.  However, all of the other claims in the Petition are time-barred unless the statute of limitations was tolled.

### 4.     Statutory Tolling Under 28 U.S.C. § 2244(d)(2) Does Not Apply

Under section 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts.  *See Jurado*, 337 F.3d at 640.  But this statutory tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman*, 346 F.3d at 602 (internal quotations and citation omitted).  Since Mr. Lewis did not file his state court petition to vacate or set aside judgment of conviction or sentence until May 1, 2023 (ECF Doc. 13-1, pp. 211-20), years after the statute of limitations expired in 2019, that request for relief could "no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602.  Thus, statutory tolling under section 2244(d)(2) does not apply.

### 5.     Equitable Tolling Does Not Apply

Equitable tolling of the statute of limitations is available where a petitioner can show that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented timely filing," *Holland*, 560 U.S. at 649, or where he can demonstrate actual

---

[7] A similar finding is not appropriate with respect to the remaining grounds for relief set forth in the Petition, which are all predicated on alleged actions that preceded or related to Petitioner's guilty plea and sentencing in 2018.  *See Sexton*, 968 F.3d at 613 ("It bears noting, however, that Sexton's appeal-based claim is not a permission slip to pursue otherwise untimely trial-based claims.").

innocence though the introduction of new reliable evidence that was not presented at trial, *Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386 and *Schlup*, 513 U.S. at 324).  Mr. Lewis has failed to show that he is entitled to equitable tolling under either of these standards.

### i.     Traditional Equitable Tolling

Respondent argues that Mr. Lewis is not entitled to traditional equitable tolling because "he has asserted no reasonable circumstances outside of his control explaining why he failed to timely file his petition before this federal Court[.]"  (ECF Doc. 13, p. 10.)  Mr. Lewis does not argue that equitable tolling should apply to excuse his untimely filing, but he does claim that his "state remedies and strategic legal advancements were 'seriously impeded'" by state action, suggesting that this prevented him from timely filing his Petition.  (ECF Doc. 1, p. 13.)  More specifically, he asserts that he was unable to timely seek state remedies and file his Petition because the state prosecutor, the trial judge, and the Cuyahoga County Clerk of Courts did not provide him with the documents he needed to bring his claims, including the victim's police reports, witness reports, and his allegedly unsigned, written plea bargain agreement.  (*Id*. at pp. 13-14.)  Petitioner sought these and other documents in a motion for trial court documents filed on August 2, 2022 (ECF Doc. 13-1, pp. 63-64), and it was denied (*id*. at p. 70).  In addition, Mr. Lewis claims the Eighth District Court of Appeals failed to enter his delayed appeals into their docket and refused to provide him with a journal entry "many times," thereby impeding his "state remedies" and delaying filing of this Petition.  (ECF Doc. 14, p. 6.)  Having considered these arguments, the undersigned finds any traditional equitable tolling argument must fail.[8]

First, as discussed in Section III.C.2.i., *supra*, the evidence before this Court indicates that the challenged actions—i.e., withholding requested documents and alleged actions relating

---

[8] Many of the failings discussed herein with respect to the traditional equitable tolling standard mirror failings previously discussed in Section III.C.2.i., *supra,* with respect to the potential application of section 2244(d)(1)(B).

to the motions for delayed appeal—all took place in or around 2022 or 2023, years after the statute of limitations expired in 2019.  Given Petitioner's unexplained four-year delay in seeking to appeal a conviction and sentence that was based on his own guilty plea, the evidence does not support a finding that "he has been pursuing his rights diligently." *Holland*, 560 U.S. at 649

Further, Petitioner's allegations regarding the state actions that allegedly impeded his pursuit of relief are not supported by the evidence in the record.  For example, there is no evidence that the state court or prosecutor promised "all exculpatory documents requested shall be release[d]" to Petitioner if he merely showed he was "seeking to actually file a 'delayed-appeal.'" (ECF Doc. 1, p. 17.)  The record shows instead that Mr. Lewis's motion for documents was opposed because he did not have a pending appeal (ECF Doc. 13-1, pp. 66-68), and his motions for leave to file a delayed appeal were denied (*id.* at pp. 59, 181, 183).  There is also no evidence that Petitioner was told his delayed appeal would be accepted so long as he filed "all the proper Delayed-Appeals-Application-Documents." (ECF Doc. 1, p. 17.)  While the record does reflect that his first motion for delayed appeal was dismissed because he did not file certain required documents (ECF Doc. 13-1, p. 59), there is no evidence of a promise that a subsequent appeal would be accepted so long as he filed those required documents.  And as to his allegation that the court of appeals failed to docket or notify him of the outcome of his motions for delayed appeal (ECF Doc. 1, p. 18), the docket sheets in the state court record indicate to the contrary that the state appeals court did docket all of his motions and related judgement entries and promptly mailed the judgment entries to Petitioner (ECF Doc. 13-1, pp. 279, 281, 285).  Thus, the evidence does not support Petitioner's allegations regarding the actions that allegedly impeded his access to state remedies.

20

Moreover, even if Petitioner could show that he requested (and was denied) trial-related documents before the statute of limitations expired in 2019, "[c]ourts have generally held that the unavailability of or delay in receiving transcripts or other state court documents is not a basis for equitable tolling." *Waters v. Warden*, No. 1:07CV758, 2008 WL 2876463, at *10 (S.D. Ohio July 24, 2008) (collecting cases). As the Sixth Circuit explained:

> A habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground." 28 U.S.C. § 2254, Rules Governing Section 2254 Cases, R. 2(c). But nowhere do the rules require the petitioner to submit a copy of the trial transcript. If anything, the rules seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record. The rules require the state to furnish the petitioner with the record once a habeas petition has been filed, and to "attach to [its] answer parts of the transcript that [it] considers relevant." *See id.* at R. 5(c). Further, the state must provide additional material upon request from the judge. *See id.* These rules indicate that a lack of access to the trial transcript is not the kind of "extraordinary circumstance" that stands in a petitioner's way and prevents a timely habeas filing. *See Holland*, 130 S.Ct. at 2562.

*Hall*, 662 F.3d at 751. While the *Hall* court dealt with trial transcripts specifically, the court's reasoning is equally persuasive with respect to documents like police reports and witness statements. (*See* ECF Doc. 1, p. 14.) The habeas rules "envision that petitioners may at times have to file their petitions without having had access to" specific evidence and include processes to seek additional discovery. *Hall*, 662 F.3d at 751 (citing Rules Governing Section 2254 Cases, Rule 5(c)); *see* Rules Governing Section 2254 Cases, Rule 6 (providing a process for discovery). Thus, the lack of access to the described documents is generally "not the kind of 'extraordinary circumstance' that stands in a petitioner's way and prevents a timely habeas filing." *Id.* (quoting *Holland*, 560 U.S. at 649). As in *Hall*, while the relevant documents may have been helpful to Petitioner, they were "not necessary to file a habeas petition, as was demonstrated in the present case by the fact that [Mr. Lewis] ultimately filed his petition without ever having received the [documents]." *Id.* at 751.

21

And finally, even if Petitioner could both demonstrate his diligence and identify state actions that impeded his pursuit of state court remedies, the question before this Court is whether an "extraordinary circumstance" prevented him from timely filing his *federal habeas petition*. *Holland*, 560 U.S. at 649.  While the undersigned observes that Petitioner has neither shown nor explained why he delayed at least four years after his conviction and sentence before requesting his trial records, attempting to file a delayed appeal, or petitioning for post-conviction relief, it is more notable for purposes of this equitable tolling analysis that Petitioner has neither shown nor explained why he delayed five years after his sentencing and four years after the expiration of his AEDPA statute of limitations before seeking to file his federal habeas petition.

For all of the reasons set forth above, the undersigned concludes that Mr. Lewis has not met his burden to demonstrate that he "pursu[ed] his rights diligently" after an "extraordinary circumstance" prevented timely filing of the Petition.  *Holland*, 560 U.S. at 649.  The undersigned therefore finds traditional equitable tolling is not warranted in this case.

### ii.    Fundamental Miscarriage of Justice

It is also evident that Mr. Lewis has failed to "credibly demonstrate actual innocence" to support an alternative basis for equitable tolling.  *Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386).  He has not presented "new reliable evidence" that was not presented at trial, such as "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence,'" to show that he was factually innocent of the underlying charges.  *Id*. at 743 (quoting *Schlup*, 513 U.S. at 324).  Indeed, Mr. Lewis pled guilty to all of the charges for which he was convicted and sentenced.  (ECF Doc. 13-1, p. 262.)  The undersigned therefore finds he has not met his burden to demonstrate that he is entitled to equitable tolling based on actual innocence.

22

For the reasons set forth above, the undersigned finds no basis to apply equitable tolling to extend the statute of limitations beyond September 22, 2019, for Grounds One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of the Petition, and concludes that those grounds for relief are untimely under AEDPA.  The undersigned therefore recommends that the Court **DISMISS** Grounds One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen as barred by the statute of limitations.[9]

Because Grounds Six and Seven may be timely under § 2244(d)(1)(D), the undersigned turns to Respondent's argument that the claims should be dismissed based on procedural default.

**D.      Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to

---

[9] The undersigned therefore will not address Respondent's alternative procedural default and merits arguments as to these claims for relief.

satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition," while procedural default applies where the remedies are no longer available.  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

Procedural default may occur in two ways.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an

24

independent and adequate grounds for precluding relief, the claim is procedurally defaulted.")
(citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## E.     Grounds Six and Seven Should Be Dismissed Based on Procedural Default

Respondent argues that all of Petitioner's grounds for relief were procedurally defaulted "due to his failures to fairly present them to the Ohio courts" and his failure "to pursue a timely

25

direct appeal of his convictions and . . . to pursue timely collateral relief," with the result that Mr. Lewis "never had 'one complete round' of Ohio's appellate review system." (ECF Doc. 13, p. 15 (citation omitted).)  Respondent also argues Petitioner has not established cause, prejudice, or a miscarriage of justice to excuse the default. (*Id.* at pp. 15-16.)  Petitioner does not address Respondent's procedural default arguments in his Traverse or Sur-reply.  A review of the record shows that Petitioner failed both to fairly present the claims in Grounds Six and Seven in the state courts, and to pursue the claims through the state's ordinary appellate review procedures.

In Ground Six, Petitioner alleges that the state court of appeals, its clerk of court, and "the prosecution" violated his constitutional rights when they made certain statements—i.e., that they would produce documents if he "prove[d] that he [wa]s seeking to actually file a 'delayed-appeal'" and that his delayed appeal would be accepted "if all the proper delayed-appeals-application documents[] w[]ere completed"—and then took unspecified discriminatory actions that impeded his state remedies. (ECF Doc. 1, p. 17.)  While these arguments apparently refer to the state court's actions in relation to Petitioner's two motions for leave to file a delayed appeal, Mr. Lewis did not present the constitutional arguments articulated in Ground Six to the state courts in any filing. (*See, e.g.,* ECF Doc. 13-1, pp. 23-36 (first motion for delayed appeal); *id.* at pp. 169-74 (second motion for delayed appeal); *id.* at pp. 210-20 (petition to vacate).)  Further, even if he had articulated the argument in one of his state court filings, the record reflects that he did not pursue those filings through the state's ordinary appellate review procedures. Specifically, he did not timely appeal the denial of his motions for leave to file a delayed appeal to the Supreme Court of Ohio,[10] and did not appeal the denial of his petition for post-conviction

---

[10] Although Petitioner evidently attempted to file an appeal of his second motion, his own records reflect that the filing was rejected as untimely. (ECF Doc. 1-3, pp. 1, 3.) The Clerk of the Supreme Court of Ohio must refuse to file a notice of appeal that is received after the time for filing has passed. *See* S. Ct. Prac. R. 7.01(A)(1)(b).

relief to the state court of appeals or the Supreme Court of Ohio.  Accordingly, the undersigned concludes that Mr. Lewis procedurally defaulted the claim in Ground Six because he "fail[ed] to raise [the] claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806.

In Ground Seven, Petitioner alleges that his due process rights were hindered when he was "deprived of his Eighth Appellate District Court, 'Journal-Entry,' and/or 'Judgment-Opinion-And-Journal-Entry's" relating to his delayed appeal motions, which caused serious delays in his pursuit of state remedies. (ECF Doc. 1, p. 18.)  He adds that the trial court "failed to provide the same pursuant to 'Post Conviction' dismissal." (*Id.*)  As with Ground Six, Mr. Lewis did not present the due process arguments in Ground Seven in any of his state court filings and also failed to pursue his state court filings through ordinary appellate review procedures. Accordingly, the undersigned concludes that Mr. Lewis also procedurally defaulted the claim in Ground Seven.

For the reasons set forth above, Grounds Six and Seven are subject to dismissal based on procedural default unless Mr. Lewis can establish (1) cause and prejudice to excuse the procedural defaults or (2) that a fundamental miscarriage of justice will occur if the claims are not considered.  *See Coleman*, 501 U.S. at 750.  Mr. Lewis does not argue that cause and prejudice support excusing the procedural default of those claims, and the undersigned is not aware of any good cause supporting his failure to fairly present the claims in Grounds Six and Seven to the state courts.  Further, for the reasons articulated in Section III.C.5.ii., *supra*, the undersigned also concludes that Petitioner has failed to present evidence or argument to support a finding that a fundamental miscarriage of justice will result if this Court fails to consider the claims in Grounds Six and Seven.  Indeed, as discussed in Section III.C.5.i., *supra*, the evidence

27

before this Court does not support—and indeed conflicts with—the factual allegations that are the basis for the claims in Grounds Six and Seven.

For the reasons set forth above, the undersigned concludes that Grounds Six and Seven were procedurally defaulted, and Mr. Lewis has not met his burden to show cause and prejudice or a fundamental miscarriage of justice to excuse the default.  Accordingly, the undersigned recommends that the Court **DISMISS** Grounds Six and Seven based on procedural default.[11]

### IV.  Motions to Proceed to Judgment and to Strike

On October 21, 2025, Petitioner filed a motion asking the Court to proceed to judgment in this case, in which he discussed the merits of his Petition and requested relief.  (*See* ECF Doc. 18.)  On October 23, 2025, Respondent filed a Motion to Strike Petitioner's motion, arguing that the motion was improperly filed in light of this Court's July 29, 2024 Order stating that "briefing on the Petition is complete and no further reply or sur-reply briefs will be accepted unless ordered by the Court." (ECF Doc. 19 (quoting ECF Doc. 17)).  Petitioner filed a memorandum in response on November 13, 2025.  (ECF Doc. 20.)

To the extent Petitioner intended this Court to consider substantive arguments from his motion when addressing the merits of his Petition, the undersigned agrees with Respondent that the filing was improper and in violation of this Court's July 29, 2024 Order.  (*See* ECF Doc. 17.)  However, to the extent Petitioner filed the motion only for the purpose of seeking Court action on the Petition, this Report and Recommendation is now before the Court, and the Court is in a position to issue a final ruling on the Petition once the parties have had an opportunity to file any objections.  The undersigned will give Petitioner the benefit of the doubt and conclude that he did not intend to file impermissible additional briefing on the Petition.

---

[11] The undersigned therefore will not address Respondent's alternative arguments regarding the merits.

Because the Court is now in a position to issue a final ruling on the Petition, after considering any objections, the undersigned **DENIES** both Petitioner's Motion to Proceed to Judgment and Respondent's Motion to Strike the Motion to Proceed to Judgment as **MOOT**.

## V.     Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** Grounds Six and Seven as procedurally defaulted and **DISMISS** the remainder of the Petition (ECF Doc. 1) as untimely under the statute of limitations.

Petitioner's Motion to Proceed to Judgment and Respondent's Motion to Strike the Motion to Proceed to Judgment are both **DENIED** as **MOOT**.


Date: April 22, 2026

> _/s/ Amanda M. Knapp_  
> AMANDA M. KNAPP  
> UNITED STATES MAGISTRATE JUDGE


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

29